ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL 25 PM 12:00
CLERK C. Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ZACHARY LEON WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-048 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Zachary Leon Williams ("Plaintiff") appeals the decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

Plaintiff protectively applied for SSI on January 24, 2008, alleging a disability onset

---

[1] The Court takes judicial notice of the fact that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin, Acting Commissioner of Social Security Administration, as Defendant in this case. Nevertheless, for ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

date of January 24, 2008. Tr. ("R."), pp. 103-09. The Social Security Administration denied Plaintiff's applications initially, R. 50-53, and on reconsideration, R. 57-60. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on February 4, 2010. R. 25-45. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as Dennis Patrick Conroy, a Vocational Expert ("VE"). Id. On May 12, 2010, the ALJ issued an unfavorable opinion. R. 13-20.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 24, 2008, the application date. (20 C.F.R. §§ 416.971 *et seq.*).

2. The claimant has the following severe impairments: borderline intellectual functioning with learning disability; mixed mood disorder; bipolar disorder, mixed vs. depressive disorder NOS; anti-social behavior-personality pattern: borderline/anti-social; and impulse control disorder. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, & 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a wide range of work at all exertional levels but with the following nonexertional limitations: he has marked (cannot do) limitation of his abilities for understanding, remembering, and executing detailed or complex instructions; moderate limitations (limited but satisfactory) in his ability to interact with the public, coworkers, and supervisors; moderate limitations (limited but satisfactory) in ability to handle stress and change in the workplace. He is best suited for situations with reduced contact with the public, coworkers, and supervisors, and should avoid intense interactions. He is best suited for repetitive, routine tasks, and should avoid fast paced change or production type jobs. The claimant has no past relevant work (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, as well as the testimony of the VE, there are jobs that exist in

> significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)). Thus, the claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2008, through May 12, 2010 (the date of the ALJ's decision).

R. 15-20.

When the Appeals Council denied Plaintiff's request for review, R. 1-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in finding that Plaintiff does not meeting Listings 12.05(B) or 12.05(C); and (2) the ALJ erred in failing to give great weight to the opinion of Plaintiff's treating psychiatrist. (See doc. no. 17 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's applications for benefits was supported by substantial evidence and should be affirmed. (See doc. no. 18 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the

3

Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

4

## III. DISCUSSION

### A. The ALJ Properly Found that Plaintiff Does Not Meet Listings 12.05(B) or 12.05(C)

Plaintiff's first allegation of error is that the ALJ improperly applied Listings 12.05(B) and 12.05(C) to incorrectly find that Plaintiff did not meet those Listings. (Pl.'s Br., pp. 11-14.) Specifically, Plaintiff argues that (1) he was determined to be mentally retarded as a child; (2) the record contains no evidence of any improvement in his mental capabilities; and (3) he has been assessed as having a valid full-scale IQ score of 58. (Id. at 13.) In light of that IQ score, Plaintiff argues, he meets the requirements of both Listings 12.05(B) and 12.05(C). (Id. at 13-14.) For purposes of meeting Listing 12.05(C), Plaintiff also asserts that he has demonstrated "the additional mental impairment of impulse control disorder and depressive disorder." (Id.) The Commissioner, on the other hand, contends that substantial evidence in the record supports the ALJ's finding that Plaintiff does not meet either Listing. (See Comm'r's Br., pp. 6-10.)

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that his impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that

5

when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Mental retardation," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Listing 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." Id. Alternatively, Listing 12.05(C) provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when he "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[2] The Eleventh Circuit, however, has recognized "that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on

---

[2]Although paragraph C of the 12.05 Listing sets forth two criteria in subsections (B) and (C), an IQ prong and an additional impairment prong, these criteria apply in conjunction with the Listing's definition of mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting the criteria for obtaining benefits under Listing 12.05(C)).

6

the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

Here, the ALJ found that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listings 12.04 or 12.05.[3] R. 16. With regard to Listings 12.05(B) and 12.05(C) in particular, which, pursuant to Plaintiff's argument, are the only Listings at issue here (see Pl.'s Br., pp. 11-14), the ALJ specifically found that Plaintiff's reported full-scale IQ score of 58 was invalid and therefore insufficient to satisfy the requirements of either Listing. R. 17. As previously noted, Listing 12.05(B) requires a valid IQ score of 59 or less, and Listing 12.05(C) requires a valid IQ score of 60 through 70, in conjunction with at least two additional demonstrated limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.

The ALJ acknowledged and discussed various psychological evaluations of Plaintiff, including those prepared by Marvin L. Long, Ed.D, who examined Plaintiff in a consultative capacity on March 10, 2009, and Angelita Lucero, M.D., Plaintiff's "prior treating

---

[3]Notably, in considering the "paragraph B" criteria of Listing 12.04 (equivalent to the "paragraph D" criteria of Listing 12.05), the ALJ found that Plaintiff had only mild restrictions in activities of daily living, in that he has a driver's license, is able to drive, shops for clothes, shoes, and food, and is able to count change; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace, in that he is able to drive and plays the organ every day; and no episodes of decompensation. R. 16.

7

psychologist." R. 15-16. The ALJ considered Dr. Long's findings that Plaintiff exhibited "significant inconsistencies" and that Plaintiff was properly diagnosed as "mental deficient to borderline," and Dr. Lucero's findings that Plaintiff's psychomotor activity was normal and that he did not exhibit any intellectual functioning deficits. R. 15, 241-45, 284-86. Finally, and in keeping with those findings, the ALJ referenced an evaluation prepared by Allen Carter, Ph.D, wherein Dr. Carter opined that Plaintiff's mental impairment was properly classified as borderline intellectual functioning under Listing 12.02 rather than mental retardation under Listing 12.05. R. 16, 263-67.

The only IQ score present in the medical record was reported by Dr. Long in his April 20, 2009 consultative evaluation. R. 16, 284. Although Dr. Long reported that Plaintiff's test results indicated a full-scale IQ score of 58, he explicitly qualified those results by noting that Plaintiff "appeared to be more capable" than his scores indicated and "actually did quite well with the motivational checks but may have been dealing with prior knowledge." Therefore, Dr. Long noted, he was "reporting the current scores for baseline purposes only." Id. In his decision, the ALJ referenced Dr. Long's language qualifying Plaintiff's test results and found that Plaintiff's full-scale IQ score of 58 was invalid such that it could not fulfill the requirements of Listing 12.05(B). R. 17. Furthermore, in reference to Listing 12.05(C), the ALJ found that Plaintiff failed to present a "valid verbal, performance, or full-scale IQ of 60 through 70" for the same reason; in other words, Plaintiff's invalid score of 58 could no more act to satisfy Listing 12.05(C) than it could Listing 12.05(B).[4] R. 17.

---

[4]To the extent Plaintiff argues that the additional scores in Dr. Long's report – a verbal comprehension score of 70, a perceptual reasoning score of 67, a working memory score of 63, and a processing speed score of 53 – constitute valid "verbal or performance"

8

In sum, the Court concludes that, in light of Dr. Long's clear qualification that he was reporting Plaintiff's scores for "baseline purposes only," the ALJ properly determined that Plaintiff's reported full-scale IQ score was invalid and therefore insufficient to meet the criteria for Listings 12.05(B) or 12.05(C). Again, it is Plaintiff's burden to show that his condition meets or equals a Listing, and the ALJ's finding that he did not do so here is supported by substantial evidence. See Wilkinson ex rel. Wilkinson, 847 F.2d at 662; Barron, 924 F.2d at 230.

### B. The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Psychiatrist

Plaintiff's second argument is that the ALJ erred by failing to give controlling weight to the opinion of Louis Jacobs, M.D., Plaintiff's treating psychiatrist. (Pl.'s Br., pp. 14-17.) In particular, Plaintiff argues that the ALJ improperly discounted Dr. Jacobs' opinion by "relying on the objective findings of Dr. Lucero six years earlier." (Id. at 16.) The Commissioner argues that the ALJ properly discounted Dr. Jacobs' opinion based on his finding that it was inconsistent with Dr. Jacobs' own treatment notes. (Comm'r's Br., pp. 11-13.) The Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must

---

IQ scores pursuant to the language of 12.05(C), the ALJ's decision takes into account that Dr. Long's qualification of Plaintiff's test results referred to *all* of her scores, and not just to her full-scale IQ score. R. 17, 284.

9

specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Here, as pointed out by the Commissioner, the ALJ considered the "Medical Source Statement" prepared by Dr. Jacobs on January 16, 2010. R. 19. In that statement, which consists of a series of descriptions of mental abilities next to four boxes to be checked indicating the claimant's aptitude for those abilities, Dr. Jacobs checked boxes indicating that Plaintiff was "moderately" and "markedly" limited in various categories. R. 315-18. Accordingly, the ALJ noted that Dr. Jacobs' Medical Source Statement indicated that he found "marked limitations in multiple areas." R. 19. However, the ALJ then went on to discount the findings in the Medical Source Statement because Dr. Jacobs' "treatment notes provide no support for his findings." Id. In particular, the ALJ referenced Dr. Jacobs' "progress note" from April of 2009, wherein he assigned Plaintiff a Global Assessment of Functioning Score ("GAF") of 65, described him as doing well and being pleased that his

10

medications were working, and noted that his GAF score was beginning to increase. R. 19, 309. The ALJ further stated that Dr. Jacobs' progress notes from that point forward continued in the same vein. R. 19. In short, the ALJ found that Dr. Jacobs' indication that Plaintiff exhibited marked or moderate limitations was contradicted by his own treatment notes, which consistently described Plaintiff favorably and did not indicate that Plaintiff was subject to any mental limitations. R. 309-312; see also Lewis, 125 F.3d at 1440. Indeed, Dr. Jacobs described Plaintiff as "alert, oriented, logical, relevant, and coherent" in each of his reports, which extend from April of 2009 until January of 2010. R. 309-12. In those reports, Plaintiff consistently described himself as doing well and expressed interest in continuing with his medication, which he found to be effective. Id. Additionally, Dr. Jacobs consistently noted Plaintiff's ongoing improvement. Id.

In light of the ALJ's discussion of the internal inconsistency of Dr. Jacobs' medical records, Plaintiff's argument that the ALJ improperly discounted Dr. Jacobs' opinion by relying on Dr. Lucero's findings from six years earlier is simply incorrect. (Pl.'s Br., p. 16.) In fact, nowhere in his decision did the ALJ connect Dr. Jacobs' opinion to that of Dr. Lucero in any fashion; rather, the ALJ noted – wholly apart from his discussion of Dr. Jacobs' opinion – that Dr. Lucero found Plaintiff's psychomotor activity to be normal, that he did not diagnose any intellectual functioning deficit, and that his objective findings "show [Plaintiff's] intellectual and emotional functioning do not demonstrate he is disabled." R. 15, 18.[5] In sum, the ALJ's decision to discount Dr. Jacobs' opinion based on its inconsistency

---

[5]Plaintiff also appears to have misread the ALJ's opinion to some extent, in that he equates the ALJ's finding that Dr. Jacobs' "treatment notes provide no support for his findings" with a finding that Dr. Jacobs simply had no treatment notes. (Pl.'s Br., p. 17.)

11

with Dr. Jacobs' own medical notes was supported by substantial evidence. Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583-84; Barron, 924 F.2d at 230.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 25th day of July, 2013, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

The ALJ did not discount Dr. Jacobs' opinion because Dr. Jacobs had no treatment notes, but instead because his treatment notes were inconsistent with his opinion. R. 19. Plaintiff's arguments to the contrary miss the mark entirely.

12